**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-03167-NYW-TPO

ANTONIO MILLER,

Plaintiff,

v.

COLORADO DEPARTMENT OF REVENUE,

Defendant.

---

**ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge issued on August 17, 2026 by the Honorable Timothy P. O'Hara. [Doc. 41]. Judge O'Hara recommends that the Colorado Department of Revenue's Motion to Dismiss Amended Complaint (the "Motion" or "Motion to Dismiss"), [Doc. 16], be granted, *see* [Doc. 41 at 18]. Plaintiff Antonio Miller ("Plaintiff" or "Mr. Miller") has objected to the Recommendation, [Doc. 43], and the Colorado Department of Revenue ("Defendant" or "Department of Revenue") has responded, [Doc. 54]. For the following reasons, Plaintiff's objections are **OVERRULED** and the Recommendation is **ADOPTED**.

## LEGAL STANDARDS

### I. Rule 72

A district court may refer a dispositive motion to a magistrate judge for recommendation. 28 U.S.C. § 636(b)(1)(B). The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Specific objections permit "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059 (quotation omitted).

## II. Rule 12(b)(1)

Federal courts are ones of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019) (quotation omitted).

## III. Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable

to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

### IV. Pro Se Filings

Because Plaintiff proceeds pro se, his filings are entitled to liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). But the Court cannot and does not act as a pro se litigant's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and Plaintiff must comply with the same procedural rules and substantive law that all parties are required to follow, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## BACKGROUND

Judge O'Hara recites the background of the case in his Recommendation, *see* [Doc. 41 at 2–3], and the Court adopts Judge O'Hara's recitation of the facts to which there is no objection and incorporates it into this Order. Broadly speaking, Mr. Miller—a member of the United States Army—brings claims against the Department of Revenue challenging its actions taken to collect on tax debts owed by Penthouse Enterprise LLC (or "Penthouse"), a restaurant owned by Plaintiff. *See* [Doc. 14 at ¶¶ 1–6]; *see also* [Doc. 14-4 at 1].

Mr. Miller asserts five claims. The first four claims allege violations of the Servicemembers Civil Relief Act ("SCRA"). [*Id.* at ¶¶ 18–59]. Plaintiff's fifth claim alleges a due process violation under the Fifth Amendment's Takings Clause. [*Id.* at ¶¶ 60–71]. The Department of Revenue moves to dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6). [Doc. 16]. Judge O'Hara recommends that the Court grant the Motion to Dismiss. [Doc. 41].

**ANALYSIS**

In his Recommendation, Judge O'Hara makes the following findings and conclusions. First, he finds that Penthouse is not a "servicemember" as defined in the SCRA and therefore "has no SCRA rights or entitlements." [*Id.* at 7–8]. Therefore, he concludes, Penthouse's "sales tax liability is not protected by the SCRA," [*id.* at 8], and Plaintiff's claims, "to the extent they are based on actions, notices, or final determinations regarding Penthouse Enterprise LLC's liability for unpaid sales tax, should be dismissed with prejudice," [*id.* at 9]. Judge O'Hara further finds that none of Plaintiff's arguments in favor of expanding the scope of the SCRA have merit. *See* [*id.*].

Turning to Plaintiff's specific claims, Judge O'Hara notes that "Plaintiff couches his claims on inapplicable SCRA provisions." [*Id.* at 10]. He recommends that Claim One, based on 50 U.S.C. § 3936(a), be dismissed for failure to allege any action that would subject Plaintiff to the statute's protections. [*Id.* at 10–11]. He recommends that Claim Two, based on 50 U.S.C. § 3958, be dismissed because Plaintiff does not allege the existence of any storage (or similar type of) lien on Plaintiff's property. [*Id.* at 11–13]. For Claim Three, based on 50 U.S.C. § 3931, Judge O'Hara recommends that the claim be dismissed because (1) Plaintiff alleges only actions taken against Penthouse, which is

not protected by the SCRA, and (2) Plaintiff's allegations are insufficient to state a claim under § 3931(b)(1). [*Id.* at 13–14]. Claim Four alleges a violation of 50 U.S.C. § 3937, and Judge O'Hara recommends dismissal of the claim because Plaintiff does not allege the existence of debts that were incurred before his military service. [*Id.* at 14–15]. Finally, Judge O'Hara recommends that Claim Five, the due process claim, be dismissed based on sovereign immunity. [*Id.* at 15–17]. Plaintiff objected to Judge O'Hara's Recommendation, [Doc. 43], to which Defendant filed a response, [Doc. 54].

## I. Plaintiff's Misrepresentations About Legal Authority

Before turning to the substance of Plaintiff's objections, the Court must address certain legal authorities Plaintiff cites therein. Specifically, some of Plaintiff's citations bear hallmarks of "hallucinated" citations created by generative artificial intelligence. Some of the citations contain foundational errors, like citing to the wrong court. In other instances, Plaintiff provides the correct case-identifying information but mischaracterizes the substance of the case.[1]

For example, Plaintiff cites "Hurley v. Deutsche Bank Trust Co., 2011 WL 1103376 (S.D. Cal. 2011)." *See* [Doc. 43 at 17]. The Court could not locate this specific case. The Westlaw citation provided directs the Court to *Cohen v. Federal Express Corp.*, 563 U.S. 902 (2011), not a district court case named *Hurley*. The Court did locate, through its independent research, a case with the similar name of *Hurley v. Deutsche Bank Trust Co. Americas*, which was filed not in the Southern District of California but in the Western

[1] On December 1, 2025, this Court implemented a Standing Order Regarding the Use of Generative Artificial Intelligence ("AI") in Court Filings that requires each filing to include "an AI Certification regarding the use, or non-use, of generative AI . . . in preparing the filing, signed by all individuals who contributed to the drafting of the filing." Plaintiff's objections do not contain an AI certification. *See* [Doc. 43].

District of Michigan. *See Hurley v. Deutsche Bank Trust Co. Ams.*, No. 1:08-cv-00361 (W.D. Mich).[2] None of the *Hurley* orders issued in 2011 and available on Westlaw stand for the cited proposition, i.e., Plaintiff's statement that "[in *Hurley*], the court explained that the SCRA covers interest and all 'similar charges,' including service fees, late fees, and other penalty-type assessments that operate as interest." *See* [Doc. 43 at 17].[3]

Plaintiff also cites "Brewster v. SunTrust Mortgage, Inc., 742 F.3d 876 (D.C. Cir. 2014)." [Doc. 43 at 17]. Plaintiff claims that this case "held that [50 U.S.C.] § 3937 requires creditors to forgive, not defer, all interest and charges above 6% on pre-service obligations." [*Id.* at 17–18]. Although the Federal Reporter citation provided does lead to a case called *Brewster v. Sun Trust Mortgage, Inc.*, Plaintiff attributes this case to the wrong court. *Brewster* is a Ninth Circuit case, not a District of Columbia Circuit case. *See* 742 F.3d 876. Moreover, Plaintiff misstates the holding in *Brewster*, which did not involve creditors' obligation "to forgive all interest and charges above 6% on pre-service obligations." [Doc. 43 at 17]. In *Brewster*, the Ninth Circuit was required to determine the meaning of "foreclosure" as used in the SCRA. *See* 742 F.3d at 879–80. *Brewster* did not address 50 U.S.C. § 3937 or forgiving excessive interest at all. *See generally id.*

Plaintiff's misrepresentations do not end there. Plaintiff cites *Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238 (Mo. Ct. App. 1999)—a real case—and states that "[i]n [this

---

[2] The Court notes that the Western District of Michigan's *Hurley* case is cited in the Congressional report attached to Plaintiff's First Amended Complaint. *See* [Doc. 14-6 at 10].

[3] *See Hurley v. Deutsche Bank Tr. Co. Ams.*, No. 1:08-cv-00361, 2011 WL 13196175 (W.D. Mich. Feb. 4, 2011); *Hurley v. Deutsche Bank Tr. Co. Ams.*, No. 1:08-cv-00361, 2011 WL 13196199 (W.D. Mich. Feb. 10, 2011); *Hurley v. Deutsche Bank Tr. Co. Ams.*, No. 1:08-cv-00361, 2011 WL 13196176 (W.D. Mich. Feb. 23, 2011); *Hurley v. Deutsche Bank Tr. Co. Ams.*, No. 1:08-cv-00361, 2011 WL 13196200 (W.D. Mich. Mar. 2, 2011).

case] the court granted SCRA benefit of continuance to all parties involved in the proceedings as the service member was away on active duty and was not able to participate in the defense." [Doc. 43 at 9]. This is not accurate. In *Robin Farms*, the Missouri Court of Appeals affirmed the trial court's decision to overrule a party's motion for a continuance due to his military service. *See* 989 S.W.2d at 250–52 ("[T]he trial court did not err in denying John Fay and Robin Farms's motion for continuance."). Because Plaintiff's representation about *Robin Farms* is the *opposite* of the case's actual outcome, the Court cannot conclude that Mr. Miller's representation is based on a mere misunderstanding of *Robin Farms*.

Mr. Miller also makes unsupported assertions about certain cases. He cites the case of "Batie v. Subway, 3:07-CV-1415-M 2008." [Doc. 43 at 8]. Such a case does, in fact, exist in the Northern District of Texas. *See Batie v. Subway Real Est. Corp.*, No. 3:07-cv-01415-BH (N.D. Tex.). However, Mr. Miller represents to the Court that this "[c]ase settled for approximately 10 million dollars as his [sic] SCRA rights were violated," *see* [Doc. 43 at 8], and none of the public docket information supports this assertion. Rather, the *Batie* court dismissed the plaintiff's claims against the corporate defendant for lack of subject matter jurisdiction. *See Batie v. Subway Real Est. Corp.*, No. 3:07-cv-01415-BH, 2008 WL 11350070, at *4 (N.D. Tex. June 24, 2008). The plaintiff later agreed to dismiss his claims against the individual defendant. *See Batie v. Subway Real Est. Corp.*, No. 3:07-cv-01415-BH, ECF No. 52 (N.D. Tex. July 30, 2008). While it may be possible that these two parties reached a $10 million settlement, the Court is skeptical that Plaintiff has direct knowledge of a purported 20-year-old settlement between these two private parties. Similarly, Plaintiff states that the case of *Cathey v. First Republic*

*Bank*, No. 3:00-cv-02001-RGJ-JDK (W.D. La. 2001), "settled for approximately 4 million dollars," [Doc. 43 at 8]. Again, none of the public docket entries in that case reflect the amount of the parties' settlement.

"Despite Plaintiff's pro se status, Plaintiff still has a responsibility to ensure that the authority he relies on stands for the proposition that he seeks to cite the authority for." *Clark v. Corecivic, Inc.*, No. 25-cv-00775-SLP, 2026 WL 2643902, at *6 (W.D. Okla. Sept. 8, 2026). "[A] litigant's failure to verify the accuracy of the authority cited results in waste of . . . judicial resources . . . and it can damage the credibility of the legal system." *Biglow v. Dell Techs. Inc.*, No. 25-3007, 2026 WL 813756, at *8 (10th Cir. Mar. 24, 2026). Plaintiff's misrepresentations are sanctionable. *Moore v. City of Del City*, No. 25-6002, 2025 WL 3471341, at *3 & n.2 (10th Cir. Dec. 3, 2025); *see also Biglow*, 2026 WL 813756, at *8 ("We can sanction litigants who make . . . misrepresentations . . . ."). Indeed, the misuse of generative artificial intelligence inhibits a court from adjudicating matters in a just, speedy, and economical manner. *See* Fed. R. Civ. P. 1.

"This court has the inherent power to impose sanctions that are necessary to regulate its docket, promote judicial efficiency, and deter frivolous filings." *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *6 (10th Cir. Feb. 9, 2026) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1150 (10th Cir. 2007)). Pursuant to this inherent authority, courts have stricken filings that contain misrepresentations and inaccurate citations. *See, e.g.*, *Jackson v. BOK Fin. Corp.*, No. 25-cv-00297-SEH-SH, 2026 WL 507918, at *4 (N.D. Okla. Feb. 24, 2026); *Zhang v. Driscoll*, No. 25-cv-03381-AMO, 2025 WL 3471250, at *2 (N.D. Cal. Dec. 3, 2025). Pursuant to its inherent authority, the Court sua sponte **STRIKES** Plaintiff's objections that contain misstatements of

caselaw or inaccurate citations to legal authority: Objection One and Objection Eight. The Court will not consider these objections and will not grant Plaintiff leave to re-file these objections with accurate citations or otherwise.

Furthermore, Plaintiff is **ORDERED** to **SHOW CAUSE** why additional sanctions are not warranted under Rule 11 of the Federal Rules of Civil Procedure.[4] Rule 11 provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." Fed.

[4] Plaintiff's pro se status does not relieve him from his obligation to comply with Rule 11. *Brownfield v. Cherokee Cnty. Sch. Dist. No. 35*, No. 21-cv-00312-GLJ, 2026 WL 777230, at *2 (E.D. Okla. Mar. 19, 2026); *Chumpitaz-Morales v. Bondi*, No. 25-9527, 2026 WL 382144, at *4 n.3 (10th Cir. Feb. 11, 2026).

R. Civ. P. 11(c)(1). The inclusion of misleading statements and inaccurate citations in Plaintiff's objections may amount to a violation of Rule 11. *See Doe 1 v. Mount Saint Mary High Sch. Corp.*, No. 22-cv-00992-R, 2026 WL 1329203, at *4 (W.D. Okla. May 13, 2026); *N.Z. v. Fenix Int'l Ltd.*, No. 8:24-cv-01655-FWS-SSC, 2025 WL 3626155, at *4 (C.D. Cal. Dec. 12, 2025).

Accordingly, on or before **October 21, 2026**, Plaintiff shall **SHOW CAUSE**, in writing, why he should not be sanctioned for failure to comply with Rule 11. **Plaintiff is specifically ordered to address whether he used any sort of artificial intelligence tools in drafting his objections and explain his efforts to verify the accuracy of the citations and statements in his objections.**

## II. Plaintiff's Objections

### A. Objection Two

In the Recommendation, Judge O'Hara states, in conjunction with finding that Plaintiff does not allege that Defendant tried to collect from Plaintiff during his military service, that "Plaintiff only became personally liable for the unpaid tax upon an administrative determination of his 'willful neglect or failure to pay.'" [Doc. 41 at 10]. Judge O'Hara bases this statement on an "Officer or Partner Notice of Balance Due" sent to Plaintiff in November 2023, *see* [Doc. 14-4 at 10–11],[5] as well as Colo. Rev. Stat. § 39-21-116.5(1), which provides that all members of an LLC "who willfully fail to collect, account for, or pay over" the LLC's taxes are subject to a penalty. Plaintiff claims that Judge O'Hara's statement was error because it "confuses the event giving rise to the

[5] Because Plaintiff attached this notice to his Amended Complaint, the Court may consider it in ruling on the Motion to Dismiss. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263–64 (10th Cir. 2025).

alleged liability with [the Department of Revenue's] subsequent administrative determination or assessment of that liability." [Doc. 43 at 10]. Plaintiff's argument is difficult to follow, but he appears to argue that he had to have been personally liable for Penthouse's debt at an earlier time because, otherwise, he would have had no duty to collect, account for, and pay over Penthouse's taxes and would not be subject to the statutory penalty. *See* [*id.* at 10–12 ("If Plaintiff had no obligation whatsoever concerning collection, accounting, or payment when the taxes became due, then Plaintiff could not have 'willfully failed' to perform that obligation when due.")].

Defendant responds that Plaintiff's argument "fails because it requires the Court to look past the plain language of state tax statute, limited liability concepts, the intermediate steps in which [Officer-Partner Billing ("OPB")] liability may be avoided or rebutted, and the actual process of a final OPB assessment." [Doc. 54 at 9]. First, Defendant notes that Colorado law treats individuals and their companies as distinct entities that may, but are not always, treated as a single taxable "person." *See* Colo. Rev. Stat. § 39-21-101(3) (defining "person" to include "any *individual*, firm, corporation, partnership, *limited liability company*, joint venture, estate, trust, or group or combination acting as a unit" (emphasis added)). Defendant notes that the tax assessments referenced in the Amended Complaint were issued to Penthouse, not Plaintiff. *See* [*id.* at 9–10 (citing Doc. 14 at 37–45)].

The Court is respectfully unpersuaded by Plaintiff's argument. Plaintiff improperly conflates his obligation to collect, account for, and pay over the taxes owed by Penthouse with a legal determination that he is personally liable for those taxes. That he, as the sole owner of Penthouse, had an obligation to ensure that Penthouse's taxes were paid does

not mean that he was always and inherently personally liable for those taxes. Based on the statute and the allegations in Plaintiff's Amended Complaint (and the properly considered attached exhibits), Plaintiff did not incur personal liability on Penthouse's taxes until Penthouse failed to pay its taxes and the Department of Revenue then assessed individual liability. Colo. Rev. Stat. § § 39-21-116.5(1); [Doc. 14-4 at 1–9 (payment demands sent to Penthouse); *id.* at 10–11 (Officer or Partner Notice of Balance Due sent to Plaintiff stating that "liability has been assessed" based on Penthouse's unpaid taxes)]. The Court is respectfully unpersuaded by Plaintiff's objection, which is **OVERRULED**.

### B. Objection Three

Plaintiff next argues that the Recommendation "improperly collapses three separate legal concepts: liability, administrative assessment, and collection." [Doc. 43 at 12]. He argues that "[t]he fact that [the Department of Revenue] may not have garnished Plaintiff's wages or seized his personal property during a particular period does not answer the antecedent question of whether Plaintiff was already the servicemember personally exposed to the business obligation within the meaning of the SCRA." [*Id.* at 13]. He concludes that "the Recommendation itself violates the purpose of the SCRA provisions." [*Id.*].

This objection does not clearly explain the error Plaintiff claims Judge O'Hara made, does not challenge any specific portion of Judge O'Hara's analysis, and is not tied to any of Plaintiff's particular claims. *See* [*id.*]. In other words, the objection does not permit this Court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *2121 E. 30th St.*, 73 F.3d at 1059; *see also Schupper v.*

*Cafasso*, 708 F. App'x 943, 946 (10th Cir. 2017) ("[A] generalized objection [to a magistrate judge's recommendation] is insufficient."). Because Plaintiff does not identify any specific error in Judge O'Hara's Recommendation, this objection is respectfully **OVERRULED**.

### C. Objection Four

Plaintiff next states that his "military service overlapped the relevant tax periods and administrative activity" and that "part of the tax period giving rise to the disputed liability occurred while Plaintiff was in military service." [Doc. 43 at 13]. He argues that "[t]his overlap matters because [the Department of Revenue's] personal-liability theory is based upon Plaintiff's alleged responsibility for and willful failure concerning those taxes." [*Id.* at 14]. This objection does not identify any error in Judge O'Hara's Recommendation or provide enough information for the Court to ascertain the basis of this objection. *See* [*id*. at 13–14]. This objection thus is not sufficiently specific to warrant de novo review. *See Strepka v. Sailors*, 494 F. Supp. 2d 1209, 1230 (D. Colo. 2007) ("A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review."); 2121 E. 30th St., 73 F.3d at 1059–60. This objection is respectfully **OVERRULED**.

### D. Objection Five

Claim One invokes 50 U.S.C. § 3936, which states that

> the period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State . . . by or against the servicemember[.]

50 U.S.C. § 3936(a). Plaintiff claims that, based on this statute, "the tax assessment (insufficient notice) from April 2023 to July 2023 is void and invalid as they became final without adhere to SCRA guidelines [sic]" because the Department of Revenue failed to toll Plaintiff's 30-day deadline to respond to the tax assessment(s). [Doc. 14 at ¶¶ 19–20].

Judge O'Hara concludes that Plaintiff "fails to state a plausible claim for a violation of 50 U.S.C. § 3936" because Plaintiff concedes that the notices related to the April 2023–July 2023 assessment(s) were "addressed to the entity." [Doc. 41 at 11 (quoting Doc. 14 at ¶ 20)]. He explains that because Penthouse is not a servicemember (and is therefore not permitted the tolling protections provided by the SCRA), Plaintiff's allegations cannot support a claim under this statute. [*Id.*].

Plaintiff objects that Claim One "should not be dismissed without considering whether a deadline or administrative proceeding operated against Plaintiff personally." [Doc. 43 at 14]. He argues that Colorado law "imposed a personal and affirmative obligation [on him] to account for and pay [Penthouse's] taxes, not his own personal taxes." [*Id.*].[6] He argues, without supporting authority, that when the Department of Revenue "issued correspondence establishing a proceeding, limitations period, appeal period, or administrative deadline arising from that obligation, those matters also operated

[6] Specifically, Plaintiff directs the Court to Colo. Rev. Stat. § 39-26-102, which defines "taxpayer" as "any person obligated to account to the executive director of the department of revenue for taxes collected or to be collected under the terms of this article," Colo. Rev. Stat. § 39-26-102(17), and "person" as "any individual, firm, limited liability company, partnership, joint venture, corporation, estate, or trust or any group or combination acting as a unit, and the plural as well as the singular number," *id.* § 39-26-102(6.3). Plaintiff argues that these definitions mean that "an individual and LLC . . . act[] as a unit[] that is defined as the taxpayer who accounts to the executive director of the department of revenue for taxes collected or to be collected." [Doc. 43 at 14].

against Plaintiff personally and cannot be characterized as proceedings exclusively against Penthouse." [*Id.* at 14–15 (emphasis omitted)].

The Court is respectfully unpersuaded by Plaintiff's argument, which is not supported by any legal authority interpreting the cited statutes. The Court agrees with Judge O'Hara's analysis. Plaintiff has conceded that Penthouse is not a "servicemember" under the SCRA. *See* [Doc. 43 at 7]; *see also* 50 U.S.C. § 3911(1) (defining "servicemember" as "a member of the uniformed services, as that term is defined in section 101(a)(5) of Title 10"). And the plain language of section 3936 states that the period of the servicemember's military service cannot be included in computing time "for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State . . . by or against *the servicemember*[.]" 50 U.S.C. § 3936(a) (emphasis added). Assuming that this provision applies to the period of time to object to a tax assessment, the tax assessments or notices were issued to Penthouse, *see* [Doc. 14-4 at 1–9], and they were thus not issued "against the servicemember."[7] This objection is respectfully **OVERRULED**.

### E. Objection Six

Plaintiff next argues that "Claim Two should not be dismissed." [Doc. 43 at 15]. Claim Two is asserted under 50 U.S.C. § 3958, which provides that "[a] person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on

[7] To the extent Plaintiff insists throughout the Amended Complaint that he was personally liable for Penthouse's taxes "at the moment the taxable transactions occur," *see* [Doc. 14 at 9 (emphasis omitted)]; *see also* [*id.* at 13], this is a legal conclusion that need not be accepted as true, *see Iqbal*, 556 U.S. at 678.

such property or effects without a court order granted before foreclosure or enforcement." A "lien" "includes a lien for storage, repair, or cleaning of the property or effects of a servicemember or a lien on such property or effects for any other reason." 50 U.S.C. § 3958(a)(2). Judge O'Hara recommends that Claim Two be dismissed for failure to state a claim because "Defendant's attempts to recover from Penthouse . . . on the sales tax owed cannot be considered as a lien on Plaintiff's property and effects" based on the language of § 3958. [Doc. 41 at 12]. He reasons that "[i]nterpreting § 3958 to cover any lien disregards the plain meaning, title[8] and the entire context of the SCRA." [*Id.* (footnote added)]. He also states that the statute "speaks to liens concerning a servicemember's property or effects, *i.e.*, their tangible property and possessions left behind during military service," and "[r]eading an ambiguity here to encompass enforcement of tax liability contradicts the plain meaning" of the statute. [*Id.* at 12–13].

Mr. Miller "disagrees with the Recommendation's conclusion that § 3958 is inapplicable merely because the lien at issue was a tax lien." [Doc. 43 at 15]. He "submits that § 3958 should not be limited solely to storage liens." [*Id.*]. In his view, the "fact that the property was intangible monetary property rather than tangible property does not . . . remove it from the SCRA's definition of personal property." [*Id.*].

The Court is respectfully unpersuaded that Claim Two should survive. Another district court has interpreted § 3958's "any other reason" language "to only encompass liens similar in nature to the ones specifically mentioned, namely liens for storage, repair, and cleaning." *See Whigham v. Chase Auto Fin. Corp.*, 826 F. Supp. 2d 914, 919 (E.D.

[8] This statutory section is titled "Enforcement of storage liens." 50 U.S.C. § 3958. "[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text." *I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189 (1991).

Va. 2011) (applying the *ejusdem generis* canon of statutory construction and finding that the "specific language must govern the more general language that follows it"). Especially in light of the fact that the statutory section's title expressly references storage liens, *see* 50 U.S.C. § 3958, the Court is persuaded by the *Whigham* court's analysis. Furthermore, "[e]nforcement of other types of liens are governed by other sections of the [SCRA]," so construing "any other reason" broadly would render those provisions superfluous. *Whigham*, 826 F. Supp. 2d at 919 (explaining that certain provisions of the SCRA "would become meaningless" upon adopting that broad construction); *Corley v. United States*, 556 U.S. 303, 314 (2009) ("one of the most basic interpretive canons" is that a statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (cleaned up)). The Court agrees that § 3958 does not apply to tax liens, so Claim Two should be dismissed under Rule 12(b)(6). This objection is respectfully **OVERRULED**.

### F. Objection Seven

Objection Seven concerns Claim Three, which claims "procedural violations" of 50 U.S.C. § 3931. *See* [Doc. 14 at ¶¶ 34–44]. This statutory section "applies to any civil action or proceeding, including any child custody proceeding, in which the defendant does not make an appearance" and provides certain protections against default judgments. 50 U.S.C. § 3931(a). Plaintiff alleges that "[t]he tax assessments in question (period March-July 2023), issued by Colorado Department of Revenue constitutes an [']administrative proceeding['] and is subject to the requirements of the SCRA." [Doc. 14 at ¶ 37]. He further alleges that the Department of Revenue violated § 3931(b)(1) (requiring an affidavit concerning the defendant's military status before judgment can be entered

against the defendant); § 3931(b)(2) (precluding a court from entering a judgment against a servicemember before appointing counsel); and § 3931(d) (requiring a stay of the proceeding under certain circumstances). *See* [Doc. 14 at ¶¶ 38–41].

Judge O'Hara recommends dismissal of this claim. [Doc. 41 at 13–14]. He finds that Plaintiff fails to state a plausible claim because (1) "the supporting allegations pertain only to actions taken against Penthouse Enterprise LLC, not the servicemember, Plaintiff," and (2) "Plaintiff fails to plausibly allege that a 'judgment' was rendered against him, as contemplated by § 3931(b)(1)" because the failure to appeal an administrative determination "is not a 'judgment' within the statute's meaning." [Doc. 41 at 13–14]. Plaintiff appears to only object to this second conclusion, arguing that the SCRA "defines a 'judgment' broadly to include 'any judgment, decree, order, or ruling, final or temporary.'" [*Id.* (quoting 50 U.S.C. § 3911(9))].

Section 3931 provides that a "court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit" containing certain averments about the defendant's military status. 50 U.S.C. § 3931(b)(1). It also says that a "court may not enter a judgment until after the court appoints an attorney to represent the defendant." *Id.* § 3931(b)(2). Although Plaintiff is correct that the SCRA's general definitions section defines "judgment" as "any judgment, decree, order, or ruling, final or temporary," 50 U.S.C. § 3911(9), the Court is not convinced that the Department of Revenue's tax determinations fit within any of those categories. Furthermore, § 3931's use of "*default* judgment" is material, because "the phrase is generally understood as distinct from 'judgment.'" *Fodge v. Trustmark Nat'l Bank*, 945 F.3d 880, 883 n.1 (5th Cir. 2019).

Moreover, § 3931 applies only to "any civil action or proceeding" and uses terms that suggests its application is limited to a more formal, adversarial proceeding than the one alleged by Plaintiff here. *See, e.g.*, 50 U.S.C. § 3931(a) ("This section applies to any civil action or proceeding . . . in which the defendant does not *make an appearance*." (emphasis added)); *id.* at § 3931(b)(1) (referencing a plaintiff and a defendant). In similar circumstances, other courts have concluded that § 3931 does not apply. *See Fodge v. Trustmark Nat'l Bank*, No. 18-cv-00386, 2019 WL 1245802, at *3 (W.D. La. Mar. 18, 2019) ("Defendants' use of Louisiana's executory process procedure to foreclose on Plaintiffs' mortgages is not the type of action to which Section 3931 is meant to apply."), *aff'd*, 945 F.3d 880; *D.A. Realestate Inv., LLC v. City of Norfolk*, No. 2:21-cv-00653, 2023 WL 2637382, at *8 (E.D. Va. Mar. 23, 2023) ("[N]either the Plaintiffs nor the Court's independent research has provided any basis to conclude that a failure to appeal an administrative determination is the legal equivalent to a 'default judgment' as required by § 3931 of the SCRA."), *aff'd*, 126 F.4th 309 (4th Cir. 2025).

In sum, the Court finds that Plaintiff has not identified any reversible error in Judge O'Hara's analysis that § 3931 does not apply. Accordingly, this objection is respectfully **OVERRULED**.

### G. Objection Nine

Finally, Plaintiff "objects to the recommendation concerning Claim Five." [Doc. 43 at 19]. Judge O'Hara recommends that Claim Five be dismissed without prejudice based on sovereign immunity. [Doc. 41 at 15–18]. Mr. Miller argues that (1) Judge O'Hara's sovereign immunity analysis "does not account for the SCRA's express preservation-of-remedies provision, 50 U.S.C. § 4043," [Doc. 43 at 19 (emphasis omitted)]; (2) Claim Five

should not be dismissed "merely because constitutional and other remedies are asserted alongside the SCRA claims," [*id.*]; and (3) "the State cannot invoke sovereign immunity in a manner inconsistent with controlling federal law governing Congress's constitutional war powers and the federal rights Congress enacted for servicemembers," [*id.* at 20 (citing *Torres v. Texas Dep't of Pub. Safety*, 597 U.S. 580, 585 (2022))].

As Defendant observes, Plaintiff did not raise his first argument in his Response to the Motion to Dismiss, *see* [Doc. 17 at 9, 16–17], so that argument has been waived, *see Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

As for Plaintiff's second argument, the Court is unpersuaded by it. The Court construes Mr. Miller's argument that Claim Five should not be dismissed "merely because constitutional and other remedies are asserted alongside the SCRA claims," [Doc. 43 at 19], as responsive to Judge O'Hara's observation that "[t]he Eleventh Amendment may bar a Takings Clause claim if there is a remedy available in state court," [Doc. 41 at 15]. As Judge O'Hara recognized, the Tenth Circuit has held that a taking claim must be dismissed based on sovereign immunity when a remedy is available in state court. *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1213–14 (10th Cir. 2019). Plaintiff does not identify any error in this reliance or attempt to distinguish *Williams*; rather, he just insists that the result should be different. *See* [Doc. 43 at 19]. This argument is insufficient to demonstrate an error in Judge O'Hara's Recommendation. *See Jones v. United States*, No. 22-cv-02854-PAB-MDB, 2024 WL 358098, at *3 (D. Colo. Jan. 31, 2024) (explaining that an objection that "disputes only the correctness of the

recommendation" but "does not point to any specific errors made by" the magistrate judge is insufficient).

Plaintiff also argues that "the State cannot invoke sovereign immunity in a manner inconsistent with controlling federal law governing Congress's constitutional war powers and the federal rights Congress enacted for servicemembers," relying on *Torres v. Texas Department of Public Safety*, 597 U.S. 580. [Doc. 43 at 20].[9] But as Defendant points out, the Department of Revenue does not raise a sovereign immunity defense to Plaintiff's SCRA claims; it asserts the defense only with respect to Plaintiff's constitutional claim. [Doc. 16 at 14–15]. Mr. Miller does not explain why, based on *Torres*, sovereign immunity is inapplicable to his constitutional claim. *See* [Doc. 43 at 20]. Accordingly, this objection is **OVERRULED**.

In sum, the Court agrees that Plaintiff has not stated a claim under the SCRA and that his constitutional claim is barred by sovereign immunity. Plaintiff's objections are respectfully **OVERRULED** and the Motion to Dismiss is **GRANTED**. Claims One through Four are **DISMISSED with prejudice** and Claim Five is **DISMISSED without prejudice**. Finally, on or before **October 21, 2026**, Plaintiff shall **SHOW CAUSE**, in writing, why he should not be sanctioned for failure to comply with Rule 11.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Recommendation of United States Magistrate Judge [Doc. 41] is **ADOPTED**;

---

[9] Although Defendant contends that Plaintiff did not raise his argument based on Torres in his response brief, *see* [Doc. 54 at 17], he did invoke *Torres* before Judge O'Hara, albeit in a cursory fashion, *see* [Doc. 17 at 9].

(2) The Colorado Department of Revenue's Motion to Dismiss Amended Complaint [Doc. 16] is **GRANTED**;

(3) Claims One through Four are **DISMISSED with prejudice**;

(4) Claim Five is **DISMISSED without prejudice**;

(5) The Court declines to award costs under Local Rule 54.1;[10]

(6) The Clerk of Court is directed to enter judgment in favor of Defendant and terminate this case;

(7) On or before **October 21, 2026**, Plaintiff shall **SHOW CAUSE**, in writing, why he should not be sanctioned for failure to comply with Rule 11; and

(8) A copy of this Order shall be sent to:

Antonio Miller
2100 Welton Street
#1123
Denver, CO 80205

DATED: September 30, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge

[10] Typically, costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). But a court may, in its discretion, decline to award costs where a "valid reason" exists for the decision. *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009). Because Plaintiff is a pro se litigant proceeding in forma pauperis, *see* [Doc. 4], the Court declines to award costs in this case, *see Shapiro v. Rynek*, 250 F. Supp. 3d 775, 779 (D. Colo. 2017) ("[A] district court does not abuse its discretion in denying costs when . . . the non-prevailing party is indigent." (citation omitted)).